IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JASON S. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07cv1045-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.      INTRODUCTION**

Plaintiff Jason S. Nelson applied for supplemental security income benefits under

Title XVI, 42 U.S.C. § 1381 *et seq.* (hereinafter "the Act").[1]  His application was denied at

the initial administrative level.  Plaintiff then requested and received a hearing before an

Administrative Law Judge (ALJ).  Following the hearing, the ALJ also denied the claims.

The Appeals Council rejected a subsequent request for review.  The ALJ's decision

consequently became the final decision of the Commissioner of Social Security

(Commissioner).[2]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is

_____

[1]      Plaintiff's application for supplemental security income is not included in the record.
Neither party has deemed the actual application necessary to the adjudication of issues raised by the
Plaintiff.  Accordingly, this Court will proceed with its statutory review in absence of the application.
Plaintiff has averred that he is without a portion of the Vocational Expert's testimony at the hearing
before the Administrative Law Judge (Doc. #12 at 5, 11), and has requested that he be provided a
complete copy of the transcript.  The Court notes that the "missing" pages are included in the Transcript
(Doc. #16) filed by Defendant and available to Plaintiff through the Court's ECF system.

[2]      Pursuant to the Social Security Independence and Program Improvements Act of 1994,
Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with

now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c),

both parties have consented to the conduct of all proceedings and entry of a final judgment

by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. #8);

Def.'s Consent to Jurisdiction (Doc. #7).  Based on the Court's review of the record and the

briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of
> Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

respect to Social Security matters were transferred to the Commissioner of Social Security.

[3]     A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[5] (grids) or call a vocational expert (VE). *Id.* at 1239-40.

---

[4]     *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[5]     *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

4

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty-seven years old and had completed the eleventh grade at the time of the hearing before the ALJ.  (Tr. 198).  Plaintiff's primary past relevant work experience involved work as a construction laborer and a printing press operator.  (Tr. 33, 215-16). Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 29, 2005 (Step 1).  (Tr. 34).  At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "history of heavy alcohol and cocaine abuse, cardiomyopathy mostly secondary to drugs, obesity, and status post defibrillator."  (Tr. 34).  The ALJ nonetheless found Plaintiff's "impairments, considered individually and in combination, to not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 34).  After finding Plaintiff's allegations of pain and functional limitations lacking full credibility, the ALJ described Plaintiff's RFC as follows:

> The claimant has the residual functional capacity to perform work within the limitations/considerations as set forth in [the Residual Functional Capacity Assessment included in the Transcript at pages 142 - 149] with the following changes: He can lift, carry, push and pull frequently up to 5 pounds and occasionally up to 10-15 pounds.  He can occasionally bend, stoop, crawl, climb, crouch, kneel, and balance.  He should avoid climbing ladders, ropes and scaffolds.  He should restrict activities involving unprotected heights.  He should avoid being around moving and hazardous machinery or driving commercial motorized vehicles.  He should avoid concentrated or excessive exposure to pulmonary irritants (dust, odors, fumes, extremes in temperature, humidity).  He experiences mild to moderate pain which occasionally affects his ability to maintain concentration, persistence, and pace.

(Step 3) (Tr. 34).  At Step 4, the ALJ found that Plaintiff could not perform any past relevant

work.  (Tr. 34).  At Step 5, the ALJ determined that, based on the Medical-Vocational

Guidelines and the testimony of the vocational expert, and in light of Plaintiff's age,

education, and transferable skills, Plaintiff could perform jobs that exist in significant

numbers in the national economy.  (Tr. 35).  Consequently, the ALJ found Plaintiff had not

been disabled since the alleged onset date.

## IV.    PLAINTIFF'S CLAIMS

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and

he articulates five specific claims in challenging the Commissioner's decision:  (1) the ALJ

erred in rejecting the opinion of Plaintiff's treating physician; (2) the ALJ erred in relying on

a state agency opinion; (3) the ALJ avoided a materiality analysis applicable to substance

abuse in combination with other conditions; (4) the ALJ failed to adequately address

Plaintiff's obesity; and (5) the ALJ failed to adequately address Plaintiff's mental

functioning.  The Court will discuss each of these claims below.

## V.    DISCUSSION

### A.    *The ALJ's treatment of Plaintiff's treating physician's opinion.*

Plaintiff claims that his treating physician, Dr. Chan, "rendered consistent opinions

over a continuum of treatment" that Plaintiff was not able to work due to his impairments.

(Doc. #12 at 6).  Plaintiff appears to argue, without specifying exactly what findings of the

ALJ conflict with Dr. Chan's, that the ALJ was required to adopt Dr. Chan's assertion, on

a questionnaire he completed at the behest of Plaintiff's attorney, that Plaintiff's impairments

are "incapacitating." *See* Tr. 150, 193. Defendant asserts that the ALJ's reasons for

discounting Dr. Chan's ultimate conclusion about Plaintiff's functional capacities are

supported by substantial evidence. (Doc. #15 at 5-7).

After hearing medical expert testimony regarding Plaintiff's functional capacities and

considering the medical evidence in the record, the ALJ indeed "rejected" Dr. Chan's opinion

that Plaintiff's impairments are "incapacitating." (Tr. 31). In reviewing a disability claim,

the opinion of the claimant's treating physician must be afforded substantial and considerable

weight by the ALJ unless "good cause" is shown to the contrary. *Crawford v. Comm'r of

Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). "'[G]ood cause' exists when the: (1)

treating physician's opinion was not bolstered by the evidence; (2) evidence supported a

contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the

doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.

2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of

a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d

1436, 1440 (11th Cir. 1997). "Where the ALJ articulated specific reasons for failing to give

the opinion of a treating physician controlling weight, and those reasons are supported by

substantial evidence," a reviewing court may not "disturb the ALJ's refusal to give the

opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 2008 WL 4962696 at *1 (11th

7

Cir. Nov. 21, 2008).

In this case, the ALJ clearly articulated the reasons he found "good cause" existed to discount the weight of the opinion of Plaintiff's treating physician.  Namely, the ALJ found that the treating physician's assessment was conclusory and not bolstered by medical evidence in the record or other expert medical opinion.  The only issue before this Court is whether that decision is supported by substantial evidence, i.e., whether the ALJ's findings are supported by "more than a scintilla," even if less than a "preponderance," of evidence in the record.

The Court first notes that, "[w]hile statements from treating physicians regarding the level of work a claimant can perform are important, they are not determinative because the ALJ has the ultimate responsibility to assess a claimant's residual functional capacity." *Id.* Only the ALJ was charged with the obligation to determine Plaintiff's RFC and, hence, whether his impairments are, in a legal sense, "incapacitating."  In considering the weight to be given Dr. Chan's conclusion, the ALJ had available a substantial amount of probative medical evidence and expert opinion, including a consultative physical examination by Dr. Colley (Tr. 136-41), a Residual Functional Capacity Assessment completed by Dr. Little (Tr. 142-49), Dr. Chan's own Physical Capacities Evaluation of Plaintiff (Tr. 192-94), which actually ascribed some greater functional capacities to Plaintiff then those ultimately found by the ALJ, and the testimony of Dr. Evans at the hearing, who explained that Dr. Chan's treatment notes and assessment, as well as that of Dr. Colley, essentially restrict Plaintiff to

sedentary work.  None of the available medical evidence before the ALJ, including Dr.

Chan's own treatment notes and Physical Capacities Evaluation, imposed such a categorical

restriction on Plaintiff's functional capacities as did Dr. Chan's response to the questionnaire

submitted by Plaintiff's counsel.  In light of all of this evidence, the ALJ's ultimate RFC

determination is supported by substantial evidence.  Accordingly, the ALJ's decision to

afford less than conclusive weight to Dr. Chan's conclusion that Plaintiff's impairments are

"incapacitating" was supported by "good cause."

### B.      The ALJ's reliance on state agency opinion.

Plaintiff claims that the ALJ erred in relying upon a Residual Functional Capacity

Assessment completed by a state agency physician (Tr. 142-49).  Plaintiff contends that the

state agency assessment was an inaccurate depiction of Plaintiff's capacities at the time of

the hearing because of an intervening surgery to install a defibrillator and other conflicting

medical evidence in the record.  The ALJ was justified in relying upon the state agency RFC

assessment.  The Court first notes that SSR 96-6p requires the ALJ, and this Court, to

consider the opinion of state agency medical and psychological consultants as relevant expert

opinion in disability proceedings.  Thus, the ALJ was required to consider and give

appropriate weight to the state agency RFC assessment in this case.  Moreover, the state

agency RFC assessment does not differ substantially from Dr. Chan's own Physical

Capacities Evaluation, which was completed after the intervening surgery.  *Compare*

Residual Functional Capacity Assessment (Tr. 142-49) *with* Physical Capacities Evaluation

(Tr. 192).  Thus, given the applicable guidelines and relatively consistent medical evidence

and testimony throughout the record, the ALJ's decision to rely upon the stage agency RFC

assessment is supported by substantial evidence.

### C.       The ALJ's materiality analysis.

Plaintiff claims that, through the ordering and juxtaposition of Plaintiff's severe

impairments in the ALJ's opinion, the ALJ implicitly found a causal link between Plaintiff's

severe impairment of cardiomyopathy and Plaintiff's history of substance abuse, but that the

ALJ nevertheless failed to engage in a required materiality analysis.  The materiality analysis

contemplated by the Plaintiff is only required in instances where the ALJ has found a

claimant disabled, including the effects of substance abuse, *see* 20 C.F.R. § 404.1535, which

the ALJ obviously did not do in this instance.[6]  Thus, the ALJ was not required to engage in

any materiality analysis in this instance, and his decision finding Plaintiff not disabled is

supported by substantial evidence.[7]

---

[6]       In his opinion, the ALJ disclosed that, hypothetically, had he found Plaintiff disabled he still would not be entitled to benefits due to his substance abuse: "Based on the documented poly-substance abuse, I conclude/find that drug and alcohol abuse is material to claimant's condition/impairments.  Thus, his abuse of alcohol and illegal drugs would necessarily be material to any finding of disability.  Accordingly even if I had found the claimant disabled, he would not be entitled to benefits." (Tr. 34).  Even if the ALJ's hypothetical materiality analysis is deficient, it is harmless in this instance, as the ALJ did not need to reach that issue.

[7]       Plaintiff appears to grasp this distinction as it relates to this case: "Had the ALJ found Plaintiff disabled pursuant to treating physician opinion, and then taken the next step of applying the materiality test, the evidence might have forced him to the conclusion that[,] absent substance abuse as a candidate for heart surgery, the Plaintiff would still be disabled from his remaining impairments." (Doc. #12 at 9).  However, Plaintiff does not explain why such speculation is relevant in this case, given the ALJ's explicit finding that Plaintiff is not disabled

**D.      The ALJ's treatment of plaintiff's obesity.**

Plaintiff claims that the ALJ failed to apply SSR 02-1p, which explicates the Social

Security Administration's policy on the evaluation of a claimant's obesity in disability

proceedings.  Plaintiff notes that the ruling recognizes that obesity may tend to exacerbate

other physical or mental impairments afflicting the claimant.  Plaintiff also cites to instances

in the record in which Plaintiff's weight (300 pounds or more) and high body mass index are

disclosed.  While Plaintiff correctly recites that he is obese and that obesity may exacerbate

other conditions, Plaintiff does not specifically contend that his obesity exacerbates the

effects of any of his impairments nor does he demonstrate how his obesity affects his ability

to perform work at the sedentary level dictated by his RFC.

The record reveals that the ALJ did adequately consider Plaintiff's obesity.  The ALJ

included obesity in listing Plaintiff's severe impairments.  (Tr. 34).  The ALJ also took note

of medical evidence raising Plaintiff's obesity and the resulting, even if "mild" or "stable,"

shortness of breath Plaintiff experienced.  (Tr. 24, 25).  Moreover, in formulating an RFC

which ultimately restricted Plaintiff to sedentary work, the ALJ was certainly cognizant of,

if not accommodating, Plaintiff's obesity.  Thus, the ALJ adequately considered Plaintiff's

obesity and his determination of Plaintiff's RFC is supported by substantial evidence.

**E.      The ALJ's Treatment of Plaintiff's Mental Functioning.**

---

regardless of his history of substance abuse.

Plaintiff claims that the ALJ failed to "adequately consider Plaintiff's mental impairments," and also that Plaintiff's mental impairments "created an insufficiency in the record that the ALJ failed to address" by either obtaining a psychological consultative examination or re-contacting Plaintiff's physician, Dr. Chan. (Doc. #12 at 10-11). Plaintiff cites to a portion of the record in which Dr. Chan - a cardiac specialist - diagnosed Plaintiff with depression/anxiety and gave him a prescription for the anti-depressant Lexapro. (Tr. 153-54). Plaintiff contends that "[t]here was no indication that the mental impairments had resolved by [the time of the ALJ hearing,] or would be expected to resolve within twelve months." (Doc. #12 at 10). Defendant maintains that the ALJ adequately considered Plaintiff's mental condition and that the ALJ was not required to further develop the record in that regard.

At the hearing, approximately three months after Dr. Chan's diagnosis, the ALJ asked Plaintiff whether he was currently receiving any "mental health treatment," which Plaintiff denied. (Tr. 202). In his opinion, the ALJ found that Plaintiff's "anxiety and depression have not existed for a sufficient time for an appropriate longitudinal evaluation to be performed. Therefore, I cannot readily find that the claimant's anxiety and depression are severe mental impairments which have lasted or are expected to last for a period of twelve continuous months." (Tr. 30). In order to find an impairment disabling, the ALJ must find that it has caused an "inability to engage in any substantial gainful activity . . . [and] can be expected to result in death or . . . has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *See also* 20 C.F.R. §§ 404.1505, 416.905; *Barnhart v. Wilson*, 535 U.S. 212, 218-20 (2002). Given that Plaintiff's diagnosis of depression occurred only three months before the hearing and that he had foregone any further mental health treatment by the time of the hearing, the ALJ was justified in finding that Plaintiff's mental health impairments were not of a sufficient duration to allow appropriate consideration, much less render Plaintiff disabled.

Nor was the ALJ required to take further steps to develop the record with respect to Plaintiff's mental impairments. Plaintiff has not identified any "gaps" in the evidence before the ALJ which would have enhanced his disability claim respecting mental impairments. *See Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). Plaintiff relies only upon the scant evidence of depression included in Dr. Chan's report - evidence which was considered by the ALJ prior to adjudication. While such evidence is relevant to Plaintiff's claim of mental impairment, the ALJ's decision to forego further record development based on Dr. Chan's report alone is supported by substantial evidence given Dr. Chan's specialty - cardiology - and given that the ALJ had already found other aspects of Dr. Chan's various opinions conclusory. Likewise, the ALJ was not required to re-contact Dr. Chan in order to clarify his opinion on Plaintiff's mental impairments. The ALJ should re-contact a treating physician only when the evidence received from the physician is inadequate to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e). Here, there was no evidence in the record, other than Dr. Chan's diagnosis shortly before the hearing, supporting a finding of severe

depression or anxiety.  Again, due to Plaintiff's decision to forego further mental health treatment at the time of the hearing, the ALJ was justified in concluding that either Plaintiff's condition had improved, or, for the reasons given above, that Dr. Chan's opinion was properly limited in weight.  In any event, Plaintiff has identified no "gaps" in the evidence giving rise to the likelihood of unfair prejudice due to the ALJ's decision not to re-contact Dr. Chan.

The ALJ's finding that Plaintiff's depression/anxiety does not amount to a severe impairment is supported by substantial evidence.  Accordingly, the ALJ did not err in further developing the record with respect to Plaintiff's mental health functioning.

## V.    CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

DONE this 9th day of January, 2009.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE